UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VONNIE M. CRAWFORD, | ) |
| | ) CASE NO. C13-1786-JCC-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY DISABILITY |
| CAROLYN W. COLVIN, Acting | ) APPEAL |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Vonnie M. Crawford proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, the Court recommends this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1957.[1]  She completed the ninth grade of school,

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

REPORT AND RECOMMENDATION
PAGE -1

obtained a GED, and received vocational training and licenses in medical assistance and manicuring. (AR 44.) Plaintiff previously worked as, among other things, a manicurist, medical assistant, phlebotomist, nurse assistant, and home attendant. (AR 29, 69-70.)

Plaintiff filed her DIB application in February 2011, alleging disability since December 31, 2008. (*See* AR 176-77, 255.) She later amended her onset date to January 1, 2010. (AR 41.) Her application was denied initially and on reconsideration, and she timely requested a hearing.

ALJ Ilene Sloan held a hearing on May 21, 2012, taking testimony from plaintiff and a vocational expert (VE). (AR 37-77.) On June 14, 2012, the ALJ rendered a decision finding plaintiff not disabled. (AR 17-31.) Plaintiff timely appealed.

The Appeals Council denied plaintiff's request for review on August 16, 2013 (AR 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, concluding work she performed on a self-employed basis as a manicurist after that date fell below the

---

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

presumptive threshold for substantial gainful activity. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's status post right carpal tunnel release, degenerative disc disease, generalized anxiety disorder, and depressive disorder not otherwise specified (NOS) severe. The ALJ found a number of other impairments not severe, including left hand carpal tunnel syndrome, left eye vitreous degeneration, asthma, marijuana use, hypothyroidism, fibromyalgia, and vertigo. She also found no medically determinable cognitive disorder or cardiac impairment associated with complaints of chest pain. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff had the RFC to perform light work, except that she can occasionally climb ramps and stairs; should never climb ladders, ropes, or scaffolds; can frequently balance and stoop; can occasionally kneel, crouch, and crawl; can perform frequent fingering and feeling with the dominant right hand; should avoid concentrated exposure to extreme cold, vibration, and hazards; and can understand, remember, and carry out simple, routine tasks. With this RFC, the ALJ found plaintiff able to perform past relevant work as an office helper, phlebotomist, and manicurist.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ

alternatively concluded plaintiff could perform other jobs existing in significant levels in the national economy, such as work as a mail clerk, marker, or library page.  The ALJ, therefore, concluded plaintiff was not disabled at any time from the amended alleged onset date through the date of the decision.

This Court's review of the final decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the final decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred at step two, in determining she could perform past relevant work, and in assessing her credibility and the opinions of her treating doctor.  She requests remand for further proceedings or, if the Court finds the record fully developed, a remand for an award of benefits.  The Commissioner maintains the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Step Two</u>

Plaintiff argues the ALJ's step two findings lack the support of substantial evidence. She raises specific challenges to the ALJ's determination that her fibromyalgia, insomnia, left carpal tunnel syndrome, and a cognitive disorder are not severe.

At step two, a claimant must make a threshold showing that her medically determinable

01 impairments significantly limit her ability to perform basic work activities. *See Bowen v.*
02 *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work
03 activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§
04 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not
05 severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal
06 effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.
07 1996 (quoting Social Security Ruling (SSR) 85-28).  "[T]he step two inquiry is a de minimis
08 screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54).
09 An ALJ is also required to consider the "combined effect" of an individual's impairments in
10 considering severity.  *Id*.  A diagnosis alone is not sufficient to establish a severe impairment.
11 Instead, a claimant must show that her medically determinable impairments are severe.  20
12 C.F.R. §§ 404.1520(c), 416.920(c).

13 A.   <u>Fibromyalgia</u>

14   Dr. Anshul Pandhi conducted a consultative rheumatology evaluation of plaintiff on
15 March 12, 2012, found significant tenderness in twelve out of eighteen "tender points," and
16 diagnosed fibromyalgia.  (AR 775-77.)  On May 18, 2012, Dr. Pandhi provided a written
17 statement that plaintiff "has a several year history of Fibromyalgia [t]hat is progressively
18 worsening."  (AR 796.)

19   The ALJ observed that Dr. Pandhi saw plaintiff on only one occasion, that the medical
20 records did not show fibromyalgia has existed for several years, and that plaintiff did not begin
21 complaining of overall body aches until February 13, 2012, when she mentioned her daughter
22 has fibromyalgia and she was familiar with the condition.  (AR 22 (citing AR 744).)  The ALJ

REPORT AND RECOMMENDATION
PAGE -5

found the medical records did not establish fibromyalgia had existed or will exist for twelve continuous months, and concluded this condition did not amount to a severe impairment. (*Id.*)

Plaintiff points to a variety of medical records, including documents submitted to the Appeals Council, reflecting her complaints of symptoms consistent with fibromyalgia, such as fatigue, interrupted sleep, and pain. (*See* Dkt. 16 at 4.) She argues that, even assuming the record supports an inference her fibromyalgia was not present until early 2012, there is nothing in the record to suggest this impairment could not be expected to last for a continuous period of twelve months. Plaintiff also argues that, even if deemed a correct step two finding, the ALJ erred in failing to consider the limitations arising from this medically determinable impairment at steps four and five. She notes that the ALJ gave significant weight to the opinions of consultative and reviewing sources who were not aware of the fibromyalgia diagnosis. (*See* AR 27-28.) However, for the reasons set forth below, the Court finds no error established.

As the Commissioner observes, both the impairment and the inability to perform substantial gainful activity must meet the twelve-month durational requirement. *Barnhart v. Walton*, 535 U.S. 212, 217-20 (2002). *See* 42 U.S.C. § 423 (d)(1)(A) (disability means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. §§ 404.1505, 1509 (claimant must have a severe impairment preventing work; impairment must have lasted or be expected to last at least twelve months). In this case, while there is a diagnosis and supporting examination results as of March 2012, there is little evidence supporting the conclusion this impairment meets the twelve-month durational requirement. "Where the evidence is susceptible to more than one

01 rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v.*
02 *Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d
03 1035, 1041 (9th Cir. 1995)).   Plaintiff's reliance on scattered reports of pain, fatigue, and/or
04 tenderness over a number of years presents an alternative interpretation of the evidence, but
05 does not demonstrate the ALJ's interpretation was not rational, or that it lacks the support of
06 substantial evidence.   Also, plaintiff misplaces her focus on an absence of evidence supporting
07 the conclusion her fibromyalgia could not be expected to last for twelve months.   Plaintiff
08 bears the burden of proving an impairment is disabling.   *Miller v. Heckler*, 770 F.2d 845, 849
09 (9th Cir. 1985).

10     Nor does plaintiff demonstrate error at subsequent steps of the sequential evaluation.
11 As plaintiff observes, an ALJ must consider the limiting effects of all of a claimant's
12 impairments, including those that are not severe, in determining RFC.   20 C.F.R. §
13 404.1545(e); SSR 96-8p.   The failure to list an impairment as severe at step two is harmless
14 where limitations are considered at step four.   *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.
15 2007).   In this case, the ALJ noted her obligation to consider all impairments, including those
16 not severe, clarified that she considered all symptoms and evidence, thoroughly addressed the
17 evidence of record, and assessed a variety of limitations.   (AR 18, 23-29.)   Plaintiff fails to
18 identify medical evidence supporting a greater degree of limitation, based on her medically
19 determinable fibromyalgia, than that assessed by the ALJ.

20 B.     <u>Insomnia</u>

21     The ALJ noted plaintiff's testimony she sleeps only four hours per night, but did not
22 find insomnia a severe impairment.   (AR 21, 63.)   She stated that, while treatment records

show insomnia, they did not indicate plaintiff sleeps four hours a night and shows her report that Ambien works well for her. (AR 21 (citing AR 419, 426).) Plaintiff points to an April 2011 record as reflecting her report of only four hours of sleep per night. (*See* AR 401.) She maintains she continued to report difficulty with sleep even with Ambien, noting Dr. Pandhi's consideration of this symptom. (AR 775-77.) She also points to evidence submitted to the Appeals Council as showing this impairment existed for a number of years. (AR 803-04, 834.)

The ALJ here reasonably relied on the minimal amount of evidence associated with insomnia and the evidence it was successfully treated in concluding plaintiff failed to demonstrate this impairment significantly limited her ability to perform basic work activities. Nor does plaintiff identify evidence supporting a greater degree of limitation than that assessed by the ALJ. The Court, as such, finds no error established.

C.      Left Carpal Tunnel Syndrome

The ALJ noted plaintiff's testimony of carpal tunnel syndrome (CTS) in her left hand, but no intention to have surgery. (AR 20, 59.) She did not find this impairment severe, stating: "She has normal strength, sensation and dexterity in the left hand and I do not see that surgery was recommended." (AR 20.)

Plaintiff notes her testimony she did not seek surgery on her left hand given the poor results on her right hand, and that, while she does not experience numbness on the left, it is painful. (AR 59-61.) She also testified her rheumatologist was not surprised her left hand did not "heal properly" given her fibromyalgia. (AR 47-48.) Finally, plaintiff points to various medical records as supporting the existence of severe left CTS. (*See* Dkt. 16 at 8.)

The medical records provide little support for the contention that plaintiff's left CTS

constituted a severe impairment. Plaintiff was found to have full grip strength on the left in September 2011 (AR 687), nerve conduction studies in October 2011 showed only "mild" CTS, with the "right slightly worse than [the] left" (AR 668-69), and, in February 2012, even plaintiff's right wrist pain was noted as "improved[]" following surgery (AR 744). To the extent plaintiff relies on her own testimony, the ALJ provided clear and convincing reasons for finding plaintiff's testimony less than fully credible, as discussed below. Moreover, as the Commissioner observes, plaintiff fails to point to any medical evidence showing her mild left CTS would prevent her from performing any of the jobs identified at step five, all of which require no more than frequent fingering, feeling, and handling with either hand. *See* Dictionary of Occupational Titles (DOT) 209.687-026, 209.587-034, 249.687-014. Plaintiff, as such, fails to demonstrate the ALJ erred in relation to her left CTS.

D. <u>Cognitive Disorder</u>

Examining psychologist Dr. Faulder Colby diagnosed cognitive disorder NOS, provisional, explaining: "With several possible causes, including a current migraine headache, I gave only a provisional diagnosis of Cognitive Disorder NOS and recommend that further memory assessment be done; if that occurs, further data reliability assessment should also be ordered." (AR 532-33.) He further stated: "[M]emory, but not necessarily understanding, appeared to be at least moderately impaired; since the effects of her having an ongoing migraine headache cannot be discounted, she may or may not actually have cognitive deficits. Further assessment is recommended." (AR 534.)

The ALJ noted Dr. Colby found plaintiff "might or might not actually have cognitive deficits[,]" and that the State agency psychological consultants did not conclude plaintiff had a

REPORT AND RECOMMENDATION
PAGE -9

cognitive disorder. (AR 20 (citing AR 533-34, 79-93, 95-110).) She found cognitive disorder NOS was not a medically determinable impairment. (*Id.*)

An ALJ has an independent duty to fully and fairly develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* Plaintiff argues the cognitive disorder evidence from Dr. Colby posed an ambiguity requiring further development of the record. The Commissioner argues the ALJ did not find the evidence ambiguous or inadequate, and, instead, looked to the evidence that plaintiff's migraine headache influenced the tests results and the absence of any evidence in the medical records as to a cognitive deficiency.

The record in this case contained, at most, a provisional diagnosis. This diagnosis, standing alone, does not suffice to support the existence of a severe impairment. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (noting SSR 96-6p "provides that a medical opinion offered in support of an impairment must include 'symptoms [and a] *diagnosis*.'") (emphasis in original); *Carrasco v. Astrue*, No. ED CV 10-0043 JCG, 2011 U.S. Dist. LEXIS 12637 at*12-13 (C.D. Cal. Feb. 8, 2011) ("A 'rule-out' diagnosis is by no means a diagnosis. In the medical context, a 'rule-out' diagnosis means there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out.")

Nor does the Court find error in the development of the record. The ALJ relied on the opinions of two State agency non-examining physicians, both of whom considered the provisional diagnosis by Dr. Colby, but concluded the record did not support the existence of a medically determinable cognitive disorder impairment. (*See* AR 90-91, 102.) In light of that

evidence, the ALJ did not find the record either ambiguous or inadequate. Plaintiff fails to demonstrate the ALJ's determination, and reliance on the evidence from the reviewing physicians, was unreasonable. For this reason, and for the reasons stated above, plaintiff fails to demonstrate any error at step two.

### Credibility

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ in this case found that, while plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged, plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Contrary to plaintiff's contention, the ALJ supported her credibility determination with clear and convincing reasons.

A. Activities

The ALJ noted plaintiff worked as a manicurist/pedicurist part-time through November 2011, which required she "cart her equipment to the client's residence, fill a soaking tub with

water, use a Dremel tool, and file and clip the client's toenails and fingernails."  (AR 26.)  She "performed much of this work bent over."  (*Id*.)  The ALJ found these activities to "belie the degree of back pain alleged and indicate [plaintiff] had the ability to concentrate, see, and use her hands."  (*Id*.)  The ALJ also found "she reads a lot, gardens, uses her computer for e-mail, and does the banking and bill paying for her household online, which shows her concentration and memory are less problematic than she has alleged.  (*Id*.)  She pointed to plaintiff's report "she walks approximately 1/2 mile to her son's house on occasion[,]" and "used to ride bicycles with her husband 'all the time' until the beginning of last year, which was a year after the amended alleged disability onset date."  (*Id*.)  The ALJ, accordingly, properly considered evidence of plaintiff's activities as contradicting her testimony as to the degree of her impairment, including evidence of work activity and significant physical activity within the period of time in which plaintiff alleged disability.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  *See also Smolen*, 80 F.3d at 1284 (work history properly considered).

B.   Objective Evidence

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p.  Also, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008).  The ALJ here properly considered mild, mild-to-moderate, and normal imaging results, as well as numerous normal and other findings on examination as bearing on the credibility of plaintiff's testimony as to the

degree of her limitations.  (AR 26.)  Plaintiff's reliance on her diagnosis of fibromyalgia does not undercut the substantial evidence support for the ALJ's consideration of the objective evidence given the absence of any error established in relation to that impairment.

C.     Inconsistency

The ALJ pointed to inconsistency between plaintiff's testimony that her right hand worsened following CTS surgery (*see* AR 59) and the treatment records, which showed improvement following and benefit from the surgery.  (AR 26 (citing AR 695-96, 744, and 710).)  This consideration of inconsistency between plaintiff's testimony and the evidence was entirely appropriate.  *See Tonapetyan*, 242 F.3d at 1148.  Indeed, "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  SSR 96-7p.  Again, plaintiff's reliance on the fibromyalgia diagnosis (*see* Dkt. 16 at 19) does not demonstrate error.

D.     Mental Health Treatment and Complaints

The ALJ noted "very little mention of depression or anxiety in the treatment records[,]" and the absence of any psychiatric hospitalization, mental health counseling, or psychotropic medication, other than medication for sleep.  (AR 26.)  She noted that, while plaintiff claimed panic attacks at the consultative psychological evaluation, she did not mention this to her regular doctor, stating:  "The claimant has a multitude of complaints and I find it unlikely that she would neglect to mention panic attacks to her doctor."  (AR 26-27 (citing AR 528 (plaintiff reported she "does not tell" her doctor about her panic attacks "because no one has ever found a cause."))) The ALJ also noted that, on March 12, 2012, plaintiff "reported having noticed some depressed mood lately, which suggests it was a recent development[,]" and that another

examination on the same day "showed normal mentation, memory, attention span and concentration."  (AR 27 (citing AR 776-77, 789).)  She added:  "Again, the claimant pays the bills and does the banking for her household, which indicates her memory is less problematic than alleged."  (AR 27.)

An ALJ properly considers an unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  An ALJ also properly considers a plaintiff's failure to report allegedly debilitating symptoms to her treatment providers.  *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006).  In this case, the ALJ reasonably considered the absence of mental health treatment or reports of associated symptoms as bearing on the credibility of her testimony as to the degree of her impairment.  For this reason, and for the reasons stated above, plaintiff fails to demonstrate the ALJ's credibility assessment lacks the support of substantial evidence.

<u>Treating Physician's Opinions</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester*, 81 F.3d at 830.  Contradicted medical opinions may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff argues error in the ALJ's consideration of the opinions of treating physician Dr. Thomas Byrne.  She notes the ALJ's failure to address the weight assigned the opinions of Dr. Byrne, and the absence of specific and legitimate reasons for rejecting this evidence.

"As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. Here, although the ALJ did not specify the degree of weight assigned the opinions of Dr. Byrne, it is apparent she rejected his opinions. Moreover, contrary to plaintiff's contention, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting this evidence.

The ALJ addressed the various RFC questionnaires completed by Dr. Byrne. At the time Dr. Byrne assessed plaintiff as capable of using her right hand and arm for only ten percent of the work day, in February 2011, plaintiff "was still working as a manicurist/pedicurist . . . which entailed using her right dominant hand for longer periods than Dr. Byrne opined she was capable of tolerating." (AR 28 (citing AR 517).) While Dr. Byrne reported lower extremity weakness in an August 2011 questionnaire, the corresponding progress note showed normal strength in the lower extremities. (*Id*. (citing AR 322, 547).) Similarly, while Dr. Byrne found plaintiff limited in her left upper extremity in November 2011, the corresponding progress note did not describe any abnormal findings associated with plaintiff's left hand or arm, described plaintiff as appearing well and in no apparent distress, and included an entirely normal physical examination aside from some tenderness over the right SI joint. (*Id*. (citing AR 579, 658).) Also, at the time of the January 2012 questionnaire and its hand-related limitations, plaintiff was in recovery for her CTS surgery. (*Id*. (citing AR 692-93).) The ALJ additionally noted plaintiff's testimony at hearing that she could lift her twelve-pound cat. (*Id*. and AR 58.) She reasoned that the objective evidence did not support a finding plaintiff had any significant restriction with her left hand. (*Id*.) The ALJ further described March 2012 medical records as showing plaintiff was doing well since her CTS surgery, had normal gait,

coordination, and sensation, and full strength in all muscle groups tested in all four extremities, and that the most recent spine imaging showed only mild disk space narrowing, with mild-to-moderate degenerative changes, and otherwise normal osseous structures and disk spaces.  (*Id.* (citing AR 710, 789, and 518).)

The ALJ stated that, although a treating physician, Dr. Byrne "did not provide a significant rationale or cite any objective signs or findings in support of the limitations he opined" in the questionnaires.  (*Id.*)  She reasoned:  "The treatment records do not support the limitations he opined and it appears the limitations were largely based on the claimant's less than fully credible subjective complaints."  (*Id.*)

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Thomas*, 278 F.3d at 957.  An ALJ may also properly reject an opinion based on inconsistency with the record, *Tommasetti*, 533 F.3d at 1041, and due to discrepancy or contradiction between the opinion and the physician's own notes or observations, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Finally, "[a]n ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."  *Tommasetti,* 533 F.3d at 1041 (finding physician's records largely reflect claimant's reports of pain "with little independent analysis or diagnosis.") (quoting *Morgan*, 169 F.3d at 602).

Here, the ALJ noted numerous inconsistencies between opinions offered by Dr. Byrne and his own and other findings in the record, accurately described the conclusory nature of the opinions and the absence of supporting objective findings, and reasonably construed the

REPORT AND RECOMMENDATION
PAGE -16

opinions of Dr. Byrne as relying in significant part on plaintiff's discredited self-reports. While plaintiff points to various objective findings and evidence in the record, she fails to demonstrate the ALJ's reliance on other evidence and interpretation of the evidence overall was not rational. *See Morgan*, 169 F.3d at 599. Nor does plaintiff acknowledge or demonstrate error in the ALJ's reliance on contradictory opinion evidence from examining and nonexamining physicians. (AR 27-29.) *See Thomas*, 278 F.3d at 956-57 ("When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.") (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Plaintiff, in sum, fails to demonstrate error in the ALJ's consideration of the medical opinion evidence.

<u>Steps Four and Five</u>

Plaintiff argues the ALJ's step four finding that she can perform her past relevant work is erroneous, and asks that, if this is the only error found, the ALJ's decision be reversed and affirmed in other aspects. She maintains this finding should not be given any preclusive affect in "further proceedings between Ms. Crawford and the Commision[er]." (Dkt. 16 at 10.) The Court, however, finds no basis for reversal.

As the Commissioner observes, plaintiff raises no challenge to the ALJ's alternative step five finding. Nor is there any basis for concluding the ALJ erred at that step. (*See* AR 30-31.) As a general principle, an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.* Here, even if the Court were to find error at step four, such error would be harmless in light of the substantial evidence

REPORT AND RECOMMENDATION
PAGE -17

support for the ALJ's alternative step five conclusion. There is, as such, no basis for remanding this matter for further proceedings. *Id*. at 1111 ("[W]e may not reverse an ALJ's decision on account of an error that is harmless.") *See also Carmickle*, 533 F.3d at 1162-63 (the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error.")

## CONCLUSION

For the reasons set forth above, this matter should be AFFIRMED.

DATED this 7th day of May, 2014.

Mary Alice Theiler
Chief United States Magistrate Judge